IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IN RE:  BECKY GARCIA and
ESTAVAN B. GARCIA,

       Debtors.

PHILIP J. MONTOYA, Trustee,

       Plaintiff/Appellant,

v.                                                    Civil No. 07-543 BB/RHS
                                                     Adversary No.  06-1054 S
TEODORO A. GARCIA and                           Bankruptcy No.  7-05-14383 SA
ESTHER J. GARCIA,

       Defendants/Appellees.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION ON BANKRUPTCY APPEAL**

**THIS MATTER** comes before the Court on an appeal by Plaintiff/Appellant Philip J. Montoya ("Trustee") from the United States Bankruptcy Court's order and judgment in favor of Defendants/Appellees following a trial on the merits of Plaintiff's Complaint.[1] See In re Garcia, 367 B.R. 778 (D.N.M. 2007); (Judgment for Defendants, filed Apr. 11, 2007 **[Doc. No. 35]**, of Vol. 2 of Bankruptcy Record on Appeal ("Record")).  After conducting its review, this Court recommends that the United States Bankruptcy Court's judgment in favor of Defendants/Appellees and against Plaintiff/Appellant be affirmed.

---

      [1]Defendant Esther Garcia elected to have the appeal heard by this Court instead of the Bankruptcy Appellate Panel pursuant to 28 U.S.C. §158(c)(1) and Rule 8001(e) of the Federal Bankruptcy Code.  See Order Transferring to District Court, dated May 17, 2007, BAP No. NM-07-052.

## *Background*[2]

Debtors Becky and Estevan Garcia were married in 1995. Estevan's parents, Defendants/Appellees Teodoro[3] and Esther Garcia ("Parents"), agreed to place a mortgage on their home to help Estevan pay a debt. In February of 2000, Debtors wanted to consolidate their bills. Teodoro and Debtors agreed that Parents would convey their house to Debtors so that Debtors could obtain a mortgage on it in their names, with the proviso that Debtors immediately deed the property back to Parents. On February 23, 2000, Parents executed a warranty deed for the house to Debtors. The deed was recorded two days later and contained no restrictions. Debtors paid and Parents received no consideration for the deed.

Because Debtors were unable to qualify for a mortgage due to Estevan's poor credit, Debtors executed a sole and separate property agreement that conveyed Estevan's interest in the house to Becky. On April 21, 2000, Becky executed a mortgage to Greenpoint Mortgage Funding ("GMF"), borrowing $35,000. The closing statement showed that $19,060 was applied to pay off Parent's original mortgage with First Security Bank, other payments were made to various credit card companies and $2,339 went to Becky.[4] No funds went directly to Parents. Debtors have made all payments to GMF.

At trial, Debtors testified that the property was to be deeded back to Parents within two weeks of the mortgage closing. Becky believed that she filled out a deed returning the house in

---

[2]The background is taken from the factual findings and summary set forth in the Bankruptcy Court's memorandum opinion. See In re Garcia, 367 B.R. 778, 779-81 (D.N.M. 2007).

[3]Teodoro Garcia died on September 25, 2005. In re Garcia, 367 B.R. at 779 n.2.

[4]Also among the closing costs was a charge for County taxes on the property in the amount of $291.82. These are the only taxes Debtors ever paid on the property.

connection with the closing, but was unable to locate it. She also believed that it may never have been done. In mid-2004, after discovering that the house had not been deeded back per agreement, Teodoro called Becky and told her to execute a deed. Surprised that she still had title, Becky immediately executed a Quit Claim Deed to Parents. The deed, recorded on July 14, 2004, recites that it was for "Zero dollars" consideration. Parents have continuously lived in the house for over 40 years.

On July 14, 2004, Debtors were insolvent, with debts exceeding their assets. However, neither Debtor was contemplating bankruptcy at this time. On May 30, 2005, within one year of recording the Quit Claim Deed, Debtors filed their Chapter 7 case for bankruptcy. Plaintiff was appointed Trustee and continues in that capacity. Plaintiff argues that a fraudulent or preferential transfer occurred in 2004. Defendants contend that no "transfer of an interest" occurred because Debtors held only "bare legal title" to the house. Following a trial on the merits, the Bankruptcy Court entered judgment in favor of Defendants/Appellees and against Plaintiff/Appellant "on the basis of constructive trust or resulting trust." In re Garcia, 367 B.R. at 786.

### *Standard of Review*

When reviewing a decision of the Bankruptcy Court, this Court functions as an appellate court and is authorized to affirm, reverse or modify the Bankruptcy Court's ruling or remand the case for further proceedings. Bartmann v. Maverick Tube Corp., 853 F.2d 1540, 1543 (10th Cir. 1988). "For purposes of standard of review, decisions by trial courts are traditionally divided into three categories. There are questions of law, which are reviewable *de novo*. *De novo* review requires an independent determination of the issues, without deference to the bankruptcy

court's legal conclusions. Questions of fact are reviewed for clear error. A factual finding is clearly erroneous when it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.[5] Finally, there are matters left to the discretion of the trial court, which are reviewable for abuse of that discretion. Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." In re Telluride Global Development, LLC, 380 B.R. 585, 592 (10th Cir. BAP 2007) (citations, internal quotation marks and internal brackets omitted) (footnote inserted).

## *Discussion*

The general issue before this Court is whether the Bankruptcy Court erred in granting judgment in favor of Defendants/Appellees and against Plaintiff/Appellant following a trial on the merits of Plaintiff's Complaint to recover preferential or fraudulent transfer. Plaintiff specifically contends that the Bankruptcy Court erred in the following ways: (1) in finding that a confidential relationship existed between Debtors and Defendants; (2) in finding that Defendants did not receive consideration for the transfer of the property to Debtors in 2000; (3) in finding that Defendants did not intend that Debtors should have the beneficial interest of the subject property; and (4) in failing to address Plaintiff's alternative claim of preference regarding ten months of payments that Debtors made to GMF. Appellees contend that the Bankruptcy Court

---

[5] Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. In re Stanton, 136 B.R. 562, 563 (D. Kan. 1992).

did not err in its decision and further request an order awarding costs and attorney fees in their favor.

*Issue 1: Whether the Bankruptcy Court erred in finding that a confidential relationship existed between Debtors and Defendants*

The Bankruptcy Court found that "Debtors and Parents were in a confidential relationship." In re Garcia, 367 B.R. at 785. Appellant contends that "[t]his finding is not supported by any evidence." (Appellant Philip J. Montoya's Brief ("Appellant's Brief") at 7, filed Jul. 18, 2007 **[Doc. No. 5]**). However, this Court is satisfied that the Bankruptcy Court's finding of a confidential relationship is supported by substantial evidence

In New Mexico, "[a] confidential or fiduciary relation exists whenever trust and confidence is reposed by one person in the integrity and fidelity of another."[6] Montoya v. Torres, 113 N.M. 105, 110, 823 P.2d 905, 910 (1991) (citation omitted). Here, the Bankruptcy Court noted that Parents had agreed to place a mortgage on their home to help Estevan pay his debts. Teodoro and Debtors later agreed that Parents "would convey their house to the Debtors so that the Debtors could obtain a mortgage on it in their names, with the proviso that the Debtors immediately deed the property back to the Parents."[7] In re Garcia, 367 B.R. at 780. Moreover, the Bankruptcy Court had the benefit of hearing and observing the testimony of both

---

[6]In addition, the Supreme Court of New Mexico has noted "the tendency of courts to liberally construe confidential relationships." Garcia v. Marquez, 101 N.M. 427, 429, 684 P.2d 513, 515 (1984).

[7]As Appellees note, it is difficult "to imagine a situation where one puts more trust in another person than by deeding their personal residence to someone so that a mortgage can be taken out against the property with the understanding that it will be deeded back." (Appellees Teodoro and Esther Garcia's Brief at 6, filed Aug. 1, 2007 **[Doc. No. 6]**).

Debtors and Defendant Esther Garcia at trial.[8]  In light of the evidence before it, the Bankruptcy Court did not err in finding that a confidential relationship existed between Parents and Debtors.

*Issue 2:  Whether the Bankruptcy Court erred in finding that Defendants did not receive consideration for the transfer of the property to Debtors in 2000*

The Bankruptcy Court found that when Parents executed a warranty deed to Debtors in February of 2000, "Debtors paid and Parents received no consideration for the deed."  In re Garcia, 367 B.R. at 780.  Appellant argues that the Bankruptcy Court erred in making this finding because "[s]ubstantial evidence introduced at trial demonstrates that Defendants transferred the subject property to Debtors in February, 2000 for consideration."[9]  (Appellant's Brief at 11).  However, that argument misconstrues the relevant standard of review.  The Bankruptcy Court's factual findings are "clearly erroneous" only if those findings lack factual support in the record, or if this Court, after reviewing the evidence, is left with the definite and firm conviction that a mistake has been made.  See In re Telluride Global Development, LLC, 380 B.R. at 592.  Both Debtors testified that they did not pay anything to Parents for the transfer of the deed.  (See Trial Transcript at 47, 48, 75, Vol. 1 of Record).  Defendant Esther Garcia testified that she did not receive any money in exchange for signing the document deeding the property to Debtors.  (See Trial Transcript at 91, Vol. 1 of Record). This Court concludes that substantial evidence supports the Bankruptcy Court's determination and is not convinced that a mistake has been made.  Accordingly, the Bankruptcy Court did not err in finding that

---

[8]The Bankruptcy Court found the witnesses "to be truthful, forthcoming and credible." In re Garcia, 367 B.R. at 780.

[9]Appellant further contends that the "fact [of consideration] refutes any theory of constructive trust."  (Appellant's Brief at 11).  As Appellees note, however, Appellant offers no authority in support of that contention.

Defendants did not receive consideration for the transfer of the subject property to Debtors in February of 2000.

> *Issue 3: Whether the Bankruptcy Court erred in finding that Defendants did not intend Debtors to have the beneficial interest of the subject property*

The Bankruptcy Court found that although Parents transferred title to Debtors in order "to allow them to use the house as collateral[,]" they "did not intend that Debtors take the beneficial interest to the house." In re Garcia, 367 B.R. at 785. Rather, "Parents were 'loaning' bare legal title to Debtors for a very limited period of time for a very limited purpose, with the expectation that the property would be promptly deeded back." In re Garcia, 367 B.R. at 785. The Bankruptcy Court concluded that, under the circumstances, "[h]ad Debtors failed or refused to return the house, Debtors would have been unjustly enriched . . . . [and] [a] state court would have imposed a constructive trust . . . and ordered a return of the property to the Parents." In re Garcia, 367 B.R. at 785. The Bankruptcy Court concluded that "Debtors did not have an equitable interest in the property." In re Garcia, 367 B.R. at 785. In reaching its conclusion, the Bankruptcy Court considered, *inter alia*, the factors set forth in Estate of McKim, 111 N.M. 517, 807 P.2d 215 (1991) as indicative of a party's intent regarding the transfer of property.[10]

Appellant argues that the facts of this case are distinguished from those described in McKim and urges this Court "to rule as a matter of law that Becky Garcia's pledge of the real property as collateral to obtain the mortgage loan was in itself sufficient evidence of transfer of

---

[10]For example, the Bankruptcy Court noted that "Parents never relinquished possession [of the home]. [Defendant] Teodoro [Garcia] immediately demanded a return of the Property in 2004 when he discovered it had not already been returned . . . . Parents paid the property taxes and insurance during the time title was in [Debtor] Becky [Garcia]." In re Garcia, 367 B.R. at 785.

Defendants['] . . . equitable interest to Debtors." (Appellant Philip J. Montoya's Reply Brief ("Reply") at 3, filed Aug. 6, 2007 **[Doc. No. 7]**). While the Court agrees that the facts of this case are not identical to those of McKim, it is not convinced that the variations of the facts demand a different result. In addition, it not entirely clear what standard of review the Court should apply to the Bankruptcy Court's findings regarding the retention and/or transfer of a beneficial interest in the subject property.

Appellant contends that the determination of whether Defendants retained an equitable interest in the property is a conclusion of law. (See Reply at 3 (citing Taylor v. Rupp (In re Taylor), 133 F.3d 1336, 1341 (10th Cir. 1998) (stating that the bankruptcy judge's finding that a husband "retained an equitable undivided one-half interest in the home is not a fact finding but a legal conclusion that we review de novo")). However, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has also indicated that a bankruptcy court's conclusion regarding a party's intent to retain beneficial ownership of property is a factual finding that is reviewed under a clearly erroneous standard. See McGavin v. Segal (In re McGavin), 189 F.3d 1215, 1218-19 (10th Cir. 1999) (concluding that the bankruptcy court's determination that a debtor "intended to retain a beneficial interest in the Prospector Property [home] . . . is supported by record evidence and underlying factual findings which are not clearly erroneous" and listing the bankruptcy court's findings that a debtor intended to retain beneficial ownership of photography equipment and artwork as factual findings). In this case, this Court does not find error in the Bankruptcy Court's conclusion under either standard of review.

In determining Parents' intent, the Bankruptcy Court relied on evidence presented at trial regarding the parties' intentions, including the testimony of both Debtors and Defendant Esther

Garcia. The Bankruptcy Court also considered the conduct of the parties following Parents' transfer of the deed to Debtors in 2000.[11] Based on the evidence before it, the Bankruptcy Court's factual finding that Parents did not intend to transfer the beneficial interest in their home is supported by substantial evidence and is not clearly erroneous.

Although Appellant urges this Court to rule as a matter of law that Debtor Becky Garcia's use of the house as collateral to obtain a loan necessarily demonstrates Defendants' transfer of their equitable interest in the house to Debtors, this Court declines to do so. Appellant does not cite any authority mandating such a ruling under the facts of this case. Even if this Court were to conclude that Debtor's use of the house to obtain a mortgage loan constitutes a "beneficial interest" in the property, such an interest does not represent all, or even a significant portion of the beneficial interest in the property. Finally, Appellant does not cite any authority indicating that the transfer of some beneficial interest in a property necessarily precludes the imposition of a constructive trust under New Mexico law.[12]

Appellant apparently argues that even if a constructive trust is properly imposed under New Mexico law, it does not apply in the context of a bankruptcy proceeding. (See Appellant's Brief at 16-17). Appellant cites to a bankruptcy court case from Delaware and a case from the United States Court of Appeals for the Sixth Circuit in support of this argument. A Bankruptcy Appellate Panel ("BAP") of the Tenth Circuit recognized that "[t]he applicability of constructive trust in bankruptcy proceedings has been the subject of a contentious, contradictory, and

---

[11] See note 10 supra.

[12] "State law determines whether the requirements of a constructive trust have been met." In re Lucas, 300 B.R. 526, 533 (10th Cir. BAP 2003) (citing Butner v. United States, 440 U.S. 48, 55 (1979)).

expanding body of case law." Sholer v. Carmichael (In re PKR), 220 B.R. 114, 117 (10th Cir BAP 1998). However, it also observed that while "[n]umerous courts have held that constructive trusts are not recognized or imposed in bankruptcy proceedings . . . . other courts suggest that constructive trusts are applicable in the bankruptcy context." In re PKR, 220 B.R. at 117-18 (citing In re Taylor and several other decisions suggesting that the Tenth Circuit finds constructive trusts applicable in bankruptcy) (other citations omitted). While acknowledging the tension between the bankruptcy distribution schemes and the doctrine of constructive trust, a BAP of the Tenth Circuit also noted that "[a]s a general rule, the imposition of an equitable remedy [i.e., constructive trust] is a matter left to the discretion of the court." Carlson v. Russell (In re Carlson), 337 B.R. 728, 2006 WL 41173, at **3 (10th Cir. BAP Jan. 9, 2006) (unpublished table decision) (brackets added) (citing Am. Metal Forming Corp. v. Pittman, 52 F.3d 504, 508 (4th Cir. 1995)) (affirming the bankruptcy court's decision not to impose a constructive trust).

The parties do not cite any decision by the Tenth Circuit or a BAP of the Tenth Circuit holding that constructive trusts are inapplicable in bankruptcy proceedings. In light of Tenth Circuit authority suggesting that constructive trusts are applicable in a bankruptcy context, this Court declines to find to the contrary.

*Issue 4: Whether the Bankruptcy Court erred in failing to address Plaintiff's alternative claim of preference regarding ten months of payments Debtors made to GMF*

Appellant argues, in the alternative, that if this Court finds the Bankruptcy Court's determination otherwise correct, it erred in not ruling on his claim for recovery of Debtors' payments to GMF under a theory of preferential transfer. Appellees contend that Appellant has abandoned the claim. The Court agrees that Appellant has waived this claim on appeal. Although Appellant raised this argument in his opening brief, he did not include it in a statement

of issues on appeal, as required by Federal Rule of Bankruptcy Procedure ("Rule") 8006.[13]  See, e.g., Energrey Enterprises, Inc. v. Oak Creek Energy Systems, Inc., 119 B.R. 739, 741 (E.D.Cal.1990) (citing In re Pine Mountain, Ltd., 80 B.R. 171 (9th Cir. BAP 1987)) (finding appellant's issue waived on appeal where it was neither listed in, nor inferrable from, the issues listed in the statement of issues on appeal filed pursuant to Rule 8006).  Moreover, because the Bankruptcy Court did not make explicit findings or rulings regarding this claim in its decision, the issue is not fairly reviewable by this Court on appeal.  See, e.g., In re Winders, 202 B.R. 512, 517 (D.Kan. 1996).

### *Conclusion*

Having considered the parties' submittals and the relevant law, this Court concludes that the Bankruptcy Court did not err in its decision with respect to the issues raised by Appellants. For all of the reasons set forth above, as well as those set forth by the Bankruptcy Court in its memorandum opinion, this Court recommends that the Bankruptcy Court's judgment in favor of Defendants and against Plaintiff be affirmed.  The Court further recommends that Appellees' request for costs and attorney fees be denied.

_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[13] Appellees further assert, and Appellant does not dispute, that Appellant did not raise the issue in closing argument at trial or in his post-trial briefs to the Bankruptcy Court.